Henry S. Sanford v. Joseph H. Nyman and another.

*When deed will not be reformed.* A decree to reform a deed of the right of flowage, so as to limit the right to thirty acres, will not be granted upon a bill not properly framed for that purpose, where the evidence does not show that any mistake was made in the terms of the deed, but the language of the grant is precisely what the parties meant it should be.

*When deed not canceled for alleged false representations.* A deed conveying the right to flow so much of the grantor's land, as would be flowed by raising the water of a stream by dam to a given height, will not be canceled upon a bill for that purpose, alleging that the deed was procured by false representations of the grantee, as to the quantity of land that would be flowed by thus raising the water, where the evidence shows that the parties acted upon the assumption that the prospective flowage could be ascertained with sufficient accuracy by a personal inspection of the premises and vicinity; that neither of them pretended to possess any knowledge on the subject not thus obtainable, and that an agent of the grantor inspected the premises before the conveyance for this very purpose, and in the absence of any proof that the grantee, at the time of such inspection, did any thing which did, or was calculated to, mislead such agent as to the real extent to which the land would be flowed.

*Principal and agent.* The agent having inspected the premises under such circum-

stances, his principal must be charged with the knowledge of the agent, and cannot claim to have been deceived by the representations imputed to the grantee, even if such representations were in fact made.

*Heard July 10 and 11. Decided July 12.*

Appeal in Chancery from Van Buren Circuit.

This was a bill filed by Henry S. Sanford of the state of Connecticut against Joseph H. Nyman, and Julia M. Nyman, his wife. The bill sets forth that the complainant is the owner in fee of section six in town two south, of range fifteen west, in said county of Van Buren, and that he has owned said lands more than five years last past; that Leonidas D. Dibble, of Battle Creek, Michigan, was, in the months of January and February, 1865, and for some time prior thereto, the agent of complainant in regard to the sale and conveyance of said lands, and that at the same time, M. L. Williams, who resides in the county of Barry, Michigan, was also such agent, whose business it was to look after complainant's said lands, pay the taxes as they became due and see that no trespass was committed thereon; that in the month of January, 1865, and prior thereto, one Joseph H. Nyman, of said county of Van Buren, and who at the time and since has resided near to said lands, and who then claimed to own lands in the vicinity of the same, and upon which there was a mill known as the Bangor mills, was desirous of purchasing from complainant the right to overflow thirty acres of complainant's said lands; that it was confided to said Dibble, as the agent of complainant, to bargain with said Nyman in relation to the overflow of said premises; that said Nyman represented to complainant and to his said agent, Dibble, that the raising of a dam on his own premises, at or near to said Bangor mills, twelve feet in height, would not overflow more than thirty acres of said lands; that complainant was entirely ignorant of the number of acres of said land which a dam so constructed and

raised would overflow, and that neither he nor his said agent, Dibble, had ever examined said premises in reference to said dam, and the overflow to be caused therefrom; that at the request of said Nyman and Dibble, said Williams went over a portion of said premises in company with said Nyman, in the month of December, 1864, when a large body of snow covered said premises; that said Nyman pointed out to said Williams what he desired to, in reference to said overflow, and then and there represented to said Williams that the raising of said dam would not cause an overflow of more than thirty acres of said lands; that at this time no survey was made by said Nyman and Williams and no levels or measurements taken; that said Williams was ignorant of the location and boundaries of complainant's lands, and relied entirely upon what said Nyman told him, and that from what said Nyman pointed out to him and represented to him at the time, he supposed that the raising of said dam to the height of twelve feet would not cause an overflow of more than thirty acres thereof; that said Nyman had run said Bangor mills, and resided in the vicinity of said land nearly or quite eight years, and was perfectly well acquainted with every acre thereof; that complainant, as well as his said agent, relied entirely upon the declarations, representations and statements of said Nyman in regard to the number of acres of the land which a dam of the height of twelve feet would cause to be overflowed; that said Nyman represented unto complainant and to his said agents that said dam when raised to said height would not overflow more than thirty acres in all of the said premises, which said representations complainant and his said agents then believed to be true; that it was estimated and agreed by, and between, complainant and said Nyman that said land to be overflowed by the raising of said dam was reasonably worth ten dollars per

acre; that in pursuance of said representations so made by said Nyman to complainant and to his said agents, and in the belief that said dam, when raised to said height of twelve feet, would not cause the overflow of more than thirty acres of said lands, complainant did, on February 1, 1865, by and through his said agent, Dibble, who had lawful power and authority from complainant, convey by warranty deed to said Joseph H. Nyman, and to his heirs and assigns forever, in consideration of the sum of three hundred dollars, an easement or right of flowage, of a part of section six in town two south, of range fifteen west, in the state of Michigan, described as follows, to wit: "The right and privilege to flow with water so much of said section as would be flowed by raising the water, by dam or otherwise, of the south branch of Black River to the height of twelve feet over, above and upon the apron of the Bangor mills, so called, owned by said Nyman, in the township of Bangor, in said county of Van Buren, and by measuring from the top of said apron, a height of twelve feet to the surface of the water of said south branch of Black River when raised;" that since the making and delivery of said deed to said Nyman, and in the fall of 1867, complainant ascertained and learned as a fact that said dam, when raised as is specified in said deed, will cause to be overflowed more than one hundred acres of complainant's said land; that said Nyman has now only raised said dam about ten feet, and that thereby the water of said river has been set back so that more than seventy-five acres of complainant's said land is overflowed and rendered useless and worthless.

The bill further alleges, in substance, that when Nyman made these representations he knew them to be false, and that said dam so raised would flow more than thirty acres of complainant's land; that he made them with intent to defraud complainant; that complainant relied upon said

representations as being true, and was induced thereby to make the deed, and that if he had known that more than thirty acres would be overflowed, he would not have made the deed; that the value of the lands, that would be overflowed by raising said dam to the height of twelve feet, is at least fifteen dollars per acre; that he has tendered defendants the money received for the deed, and a deed for them to execute, re-conveying to complainant said right of flowage, which they refused. The prayer is that said deed to Nyman may be set aside and held for naught, and that the defendants may be decreed to re-convey said right or easement to the complainant, or that it may be decreed that there was a mistake in said deed in not limiting the quantity of land to be overflowed to thirty acres, and that the same may be corrected, and that defendants pay complainant's damage, etc.

The answer denies the allegations of fraud and misrepresentation. Proofs were taken, and on the hearing a decree was granted dismissing the bill. The complainant appealed.

*Dwight May,* for complainant.

*Severens & Burrows,* for defendants.

GRAVES, J.

As this bill was not framed to reform the deed given to Nyman, we should not be at liberty, if the proofs authorized it, to give it effect as though it limited the right of flowage to thirty acres. And the evidence has no tendency to show that any mistake was made in the terms of the deed. The language of the grant is precisely what the parties meant it should be.

The case made by complainant is, that he was brought to make the conveyance by untrue representations of Nyman,

as to the flowage the dam would cause, which deceived him; and the evidence fails to support this claim.

The parties manifestly acted upon the assumption that the prospective flowage could be ascertained with sufficient accuracy by a personal inspection of the premises and vicinity, and no one pretended to possess any knowledge on the subject not thus obtainable. Williams was complainant's agent, and he inspected the premises before the conveyance, for the very purpose of seeing how much of complainant's land would be flowed by the dam, and seems to have been satisfied about it, because the deed was soon after made, and he gave no intimation that the flowage would be excessive. Williams having inspected the premises under these circumstances, his principal, the complainant, must be charged with the knowledge of the agent, and as a consequence, complainant cannot claim to have been deceived by the representations imputed to Nyman, if such representations were in fact made; and on a careful examination of the evidence, we can discover nothing which leads us to believe that Nyman, at the time of the inspection of the premises by Williams, did any thing which misled, or was calculated to mislead, the latter as to the real extent to which the land would be flowed. The decree must be affirmed, with costs.

The other Justices concurred.